NEW-YORK,
Nov. 1805.

Baker & Rowl-
son v.
R. & H. Ar-
nold.

Baker and Rowlson *against* Richard and Henry Arnold.

ASSUMPSIT by the indorsees against the makers of a note, for £330, dated *March* the 31st, 1796, payable on the 31st *March*, 1799, with interest from thence, to *Roswell Lombard*, or order, with an indorsement to the plaintiffs in these words : " Pay the within note to *Erastus Baker* and " *Sylvester Rowlson* value received, *March* 30th, 1799, *Ros-* " *well Lombard.*"

On the trial, the hand-writings of the defendants and payee being admitted, the plaintiffs there rested their cause.

The defendants, to establish that the indorsement was made after the note was due, and thus afford an opportunity of impeaching the consideration, by letting in their equities, called the indorsor himself, who, after some objection as to his competence, was, on the authority of the former decision in this case,* received by the court. *Lombard* then testified, that before the instrument became payable, he sold it to one *Holt*, for *Susquehannah* lands, lying in the State of *Pennsylvania*, within the *Connecticut* claim ; but that he did not then indorse it over, nor did he ever know that the note was in the hands of the plaintiffs, or that they had any interest in it till *June*, 1799, when he was called on by one *Elmer*, on behalf of the plaintiffs, with a request to indorse it, which he refused, and that he did not till the *September* after, upon a second application, yield to the persuasions of *Elmer*, a Mr. *Pepoon*, and one of the plaintiffs, by putting his name on the back of the note. This, however, he swore was done in blank, with a knowledge of the consideration on which he had parted with it to *Holt*, and that at the same time, it was mentioned, a suit had been commenced against the defendants.

The way being thus prepared for investigating what had passed from him, when the note was given to the defendants, they called one *Gardner*, a subscribing witness to the instrument, and he deposed that the consideration was, like that

In an action by a *bona fide* holder of a note taken before due, against the maker, the consideration cannot be inquired into, if the instrument be not in its creation void. The letters of an indorsor may be adduced to contradict his testimony as to the time of his indorsing, and it is for the jury to determine whether his oath or letters are to be credited.

* 1 Vol. 258.

NEW-YORK,
Nov. 1805.

Baker & Rowl-
son v.
R. & H. Ar-
nold.

for which it had been indorsed, *Susquehannah* lands, lying within the *Connecticut* claim, in *Pennsylvania.*

To rebut this testimony, and impeach *Lombard's* credit, the plaintiffs gave in evidence the following letter, to the defendants, signed by *Lombard* himself.

"*Stockbridge, May* 31, 1797.

*Messrs. Richard and Henry Arnold,*

" Gentlemen,

" This may certify that I have sold the obligation which " I held against you. I sold it to Mr. *Jacob Holt,* of *Ca-* " *naan,* in *Connecticut,* and I have received a line from Mr. " *Holt,* wishing me to transfer the obligation to *Erastus Ba-* " *ker,* and *Silvester Rowlson,* mentioning in the line, that he " has received property to the amount of the obligation, and " transferred by me, *Roswell Lombard.*" They also produced the letter of the 4th of *March,* 1799, from the defendants to the plaintiffs, set forth in the former report of this case,[*] and another of 19th of *April,* 1799, still offering to settle on the same terms, but threatening, if they were not accepted, a defence, which should prevent all recovery. The plaintiffs also produced a witness, who deposed that he was present when *Holt* disposed of the note to them, and understood from *Holt* and *Lombard,* and the defendants, the consideration, both for the transfer and making of it, to have been lands in *Canada,* a tract of which he had himself sold to the plaintiffs, who, by another person, proved, that in the beginning of *March,* 1799, one of the defendants acknowledged the note to be an honest debt, and that he had then come to make provision for its discharge.

On the part of the defendants *Lombard* was again called, and swore he never had said the note was given for lands in *Canada.*

The judge, on charging the jury, said, the first question for them to determine was, whether the note was indorsed after due ? That *Lombard* had sworn positively to this, but how far he was to be credited, was, under the circumstances of the case, for their determina-

* 1 vol. 259.
260.

tion, as the fact, with respect to the time of indorsement, came within their province to determine. If they believed it to be before the note was due, the plaintiffs were entitled to recover, as the consideration could not then be impeached. If, on the other hand, the indorsement was after the day of payment, their verdict, should they be of opinion the consideration was *Susquehannah* lands, ought to be for the defendants.

The jury having found for the plaintiffs, application was now made to set aside the verdict on two grounds. 1st. On account of misdirection in leaving the date of the indorsement to the jury. 2d. Because the verdict was against law and evidence.

*Woodworth*, for the defendants, argued, that on the first point there could be very little hesitation, for, from the decision on the first appearance of these parties before the court in 1 N. Y. T. R. 275, it appears the date of an indorsement, is perfectly immaterial, and yet from this circumstance, the jury were left to infer against the defendants, though the actual period at which it was done, lay, necessarily, within the knowledge of *Lombard*, and the insertion of the date, may well be the act of the plaintiffs. As to the verdict, he said it was against the weight of testimony, none of which went to impeach *Lombard's* credit.

*Henry* contra, cited *Peacock* v. *Rhodes** to shew that in the hands of *bona fide* holders of negotiable paper, not void *ab initio*, the consideration was not inquirable into, if the instrument was received before due ; this, he contended, appeared from the dates of the defendants' letters to the plaintiffs, and the incredibility of *Lombard's* testimony, which stood contradicted by the indorsement, and his letter of *May*, 1797. That at all events, he had parted with the note before due, and the mere act of indorsing being only what ought to have been originally performed, equity would consider it as having taken place, and a court of law permit it, at any time, to be done. *Smith* v. *Pickering, Peake, Ni. Pri. Ca.* 50.

* Doug. 633.

NE *-YORK,
Nov. 1805.

Baker & Rowl-
son v.
R. and H. Ar-
nold.

THOMPSON, J. The misdirection complained of, so far as I have been able to understand it, from the points made in the case, or from the argument of the counsel, is, that the indorsement upon the note, and the certificate of *May*, 1797, which both speak a language, directly contradicting the testimony of *Roswell Lombard*, were submitted to the jury as facts, in any measure, impeaching the veracity of *Lombard*, or the correctness of his memory. This objection appears to me altogether unfounded. It was deemed all-important to the defendants, and the turning point in the cause, to ascertain the time when the indorsement was made, whether before or after the note became payable. *Lombard*, the indorsor, swore he made it after the note fell due, though it purported to have been made before. It was admitted by the witness himself, that the indorsement was not in blank; that it was filled up when he signed his name; and from inspection, I think it is pretty evident, that the whole indorsement is his hand-writing. Here then, we have his oath one way, and his declaration in writing, the other; and it would be a little extraordinary, if a jury were not permitted to contrast the two, in order to determine which was correct. Had the indorsement been in blank, it might have altered the complexion of the case. Is it not every day's practice, to give in evidence, declarations made by witnesses, at other times, inconsistent with their testimony, in order to impeach their credit? A man is bound to tell the truth at all times, whether under oath or not; and I should hardly suppose, that because the story was committed to writing, it would excuse the falsehood; and if not, it was certainly a circumstance operating against the credit of *Lombard*. If it was not true that he made the indorsement, when it purports to have been made, his motives must have been fraudulent, and the indorsement antedated, for the purpose of precluding the defendants from a just defence. If a man, coming into a court of justice, and thus testifying the facts, which expose his own turpitude, does not render himself suspicious, I am at a loss to say what would. His oath stands directly contradicted by his

own acknowledgment in writing, in another particular. He swears positively and unequivocally, that he never knew or heard that the note was in the hands of the plaintiffs, or that they had any interest in it, or contemplated purchasing it, until after it became due; whereas, he certifies, as early as *May*, in the year, 1797, that *H. lt*, to whom he had sold the note, had written him a letter, informing him that he, *Holt*, had sold it to the plaintiffs, and requesting him, the witness, to indorse it to them. These are circumstances, in my judgment, tending strongly to impeach the credit of *Lombard*. But it was peculiarly within the province of the jury to determine the credit due to him, which they have done by their verdict. If *Lombard* was unworthy of credit, the verdict cannot be said to be either against law or evidence. It is admitted, that if the indorsement was made when it purports to have been, the consideration could not be impeached. My opinion, therefore, is, that the motion ought to be denied.

LIVINGSTON, J. I am neither dissatisfied with the judge's charge, nor with the jury.

The first was such as the testimony called for, and so far from thinking the verdict wrong, I should not, if on the jury, have consented to any other. It is probable, they disbelieved, as they had a right to do, every word Lombard said. His conduct, throughout this transaction, discovers him to be a crafty, designing man. Although he sold the note as early as in May, 1797, yet, when he discovers he had omitted to indorse it, he makes a thousand difficulties, with a view, no doubt, of extorting a further consideration. At length he puts his name on it, and immediately after sets about defeating a title derived from himself. This is not all. He swears *positively* to his ignorance " of the note's being in the plaintiffs' hand, or that " they had any interest in it, or comtemplated its purchase " until *June*, 1799." And yet two years before, he had written a letter, which is part of the case, informing the defendants " that Holt, to whom he had sold the note, " had transferred it to the plaintiffs, and wished him to

NEW-YORK, Nov. 1805.

Baker & Rowlson v. R. & H. Arnold.

NEW-YORK,
Nov. 1805.

Baker & Rowl-
son v.
R. and H. Ar-
nold.

"indorse it." Such a *wilful* departure from truth in one particular, for it could not have been a mistake, warranted the jury in discrediting every other part of his testimony. It is impossible that a man who pretends to so perfect a recollection of the most minute and immaterial circumstances, and *that* after a lapse of several years, should have forgotten so important a fact; one too, which he had communicated in writing to the defendants.

But were this a verdict against evidence, it ought not to be disturbed, because the merits are most clearly with the plaintiffs, and the defence is of the most unconscientious kind. The plaintiffs are innocent holders of this note.— They obtain it near two years before it falls due, and for a full and valuable consideration. The defendants are immediately apprized of all these facts. They treat with the plaintiffs, and *that* long *before* its time of payment had expired, and offer them satisfaction on certain terms.— Were the suit in the payee's own name, but for the plaintiffs' benefit, and all these matters had been disclosed, I would have protected their interests, and stopped every inquiry into consideration, the same not being such as to render the note void in the hands of a third person. *A fortiori,* the indorsement, *whenever* made, should have been regarded particularly in support of a just debt, as relating back to the time of its actual delivery to the plaintiffs. But this, it is said, would have been in derogation of the defendants' rights, who, if no *actual indorsement* took place, until after the note became due, might impeach its consideration. This necessarily leads to an inquiry into the nature of the present defence; for if such practice be correct in any state of things, which I do not admit, it ought not to apply to a case where the object of ascertaining the *exact* time of indorsement is to let in a defence against conscience, and founded in a violation of private faith. Although this court may have decided on the illegality of the consideration of notes of this description, and may not enforce their payment, in suits between the original parties, the obligation to pay, in *foro conscientiæ,* if the party has received value,

still remains. Such is the case here. The defendants have received full value in lands, which they have probably sold to a profit, or of which they, or their tenants, for aught that appears, may now be in the quiet enjoyment. It was not alleged or pretended that the consideration had failed, although seven years had elapsed at the last trial, since the land had been conveyed to them.

There are circumstances in this case, which look very much like a combination between the makers and payee of the note, to defraud the plaintiffs. The *Arnolds* first receive value for it, from *Lombard*, who takes care to sell it to *Holt*. When they have thus both pocketed a consideration for this paper, and sent it abroad into the world, they lay their heads together for the purpose of rendering it a nullity, in the hands of a third person. This ought not to be endured. The defendants have had two chances already; with my consent, they shall not have a third.

KENT, C. J. The most material question of fact in this cause is, whether the note was or was not actually indorsed by *Lombard*, before it became due. The indorsement purports to have been made on the 30th *March* 1799, the day before it fell due; but to repel this evidence, the indorsor testifies, that it was not indorsed until some time afterwards. He speaks positively as to the time of indorsement, and relates circumstances to confirm the accuracy of his testimony. The testimony on the part of the plaintiffs also shows, that the note was not indorsed at the time it was sold and delivered by *Lombard* to *Holt*, and by him to the plaintiffs; but it might still have been indorsed at the time the indorsement is dated. If the testimony of *Lombard* was unimpeached, it would be decisive; but there is one fact that materially affects the credit of his testimony. He testifies, in a very positive manner, that he never knew, or heard, that the note was in the hands of the plaintiffs, or that they had any interest therein, or contemplated purchasing it, until *June*, 1799; and yet, by a letter under his own hand, bearing date in 1797, and directed to the defendants,

Vol. III.        N n

NEW-YORK, he admits he had sold the note to *Holt*, and that *Holt* had
Nov.1805. sold it to the plaintiffs. This inaccuracy in his testimony,
and of which he was clearly convicted, detracts greatly
from his credibility. The circumstances relative to his
testimony, were fairly submitted to the jury, and the verdict may be considered as evidence, that the jury did not
give credit to his testimony. I think I should have drawn
a different conclusion, but still the verdict ought not, on
that account, to be disturbed. It is the peculiar province
of the jury to judge and determine upon the credit due to
a witness, when there are circumstances contradicting his
testimony and affecting his credit. Upon this ground, I
am against a new trial.

Lansing
v.
M'Killp.

SPENCER, J. gave no opinion, having been concerned.

TOMPKINS, J. concurred.