## SOUTHARD *v.* PORTER.

Where a negotiable promissory note, before its maturity, was sold and delivered to the plaintiff by the payee to whose order it was payable, but was not indorsed until after it was overdue, and after notice of a defense by the promisor to the plaintiff, and the indorsement was without recourse:—

*Held,* that the note was open to the same defenses in the plaintiff's hands, that it would have been if the sale of the note had been after it was dishonored.

ASSUMPSIT to recover the following note:

"NORTH HAVERHILL, Feb. 27, 1854.

For value received I promise to pay James Glynn or order seventy-five dollars in five equal annual payments, with interest after said payments are due.

(Signed)     IRAD PORTER."

On the note was indorsed, "April 11, 1854, received five dollars;" also, "March 6, 1855, received fourteen dollars." The indorsements were made by Glynn. The note was indorsed on the back as follows: "Without recourse to me,

JAMES GLYNN."

In July 1855, Glynn sold the note to the plaintiff and passed it over to him saying it was a good negotiable note, but did not indorse it at that time. The plaintiff took the note *bonâ fide,* and paid therefor its par value without notice of any defense existing against it. The plaintiff, a short time after receiving said note of Glynn, in July, 1855, told Porter that he had said note and held it against

him; and Porter then told the plaintiff that said note was usury, and null and void, and he should not pay it; and afterward, from 1855 to 1859, the plaintiff had called on Porter about the note, and Porter always refused to pay the note. After all of the payments had become due, in September, 1859, Glynn having refused to refund to the plaintiff the consideration paid him for the note, or to become answerable to him in any way, indorsed it as before stated: "Without recourse to me, James Glynn." The defendant offered to prove that the consideration of the note was usurious interest. If the court should be of the opinion that he could, under the foregoing facts, avail himself of that defense against the plaintiff, then the plaintiff was to become nonsuit; otherwise, judgment to be rendered for the plaintiff for the amount of the note and his costs.

*Hibbard,* and *Westgate,* for the plaintiff.

*Felton,* and *Chapman,* for the defendant.

BARTLETT, J. There is no evidence that when the note was sold to the plaintiff indorsement was omitted by mistake, accident, or fraud; Story on Notes, sec. 120; Story on Bills, sec. 201; Bailey on Bills (Am. Ed. 1826), 80, and note; or, that there was any agreement or understanding that it should be indorsed. The transfer, then, was not in the usual manner by indorsement, and was not in the usual course of business. *Davis* v. *Lane,* 8 N. H. 226; *Boody* v. *Bartlett,* 42 N. H. 558; *Crosby* v. *Grant,* 36 N. H. 279. When the indorsement was made the note was overdue and the plaintiff had been notified of the defense. In *Baker* v. *Arnold,* 3 Caines 284, there is a dictum of *Livingston,* J., that the indorsement, whenever made, should be regarded as relating back to the delivery of the note; but such is not the doctrine of the case. In *Ranger* v. *Carey,* 1 Met. 374, a note payable to A or order, had been sold in good faith and delivered to the plaintiff before maturity, and upon good consideration, but it was not indorsed till after it was overdue; and the court refused to allow the defendants to set off an indebtedness of A to themselves existing at the delivery of the note to the plaintiff, although it seems that then such a set-off was allowable in Massachusetts, as against the indorser of a dishonored note. The court, however, expressly restricted their decision to that precise state of facts, and the case seems rather a limitation of the doctrine of *Sargent* v. *Southgate,* 5 Pick. 312, than the establishment of any such general principle of relation as the plaintiff here claims. That case can hardly be regarded as an authority for the plaintiff's position; but if it could, we see nothing in it that should induce us to depart from the principles of our own decisions. According to the provisions of the case, there must be

         *A nonsuit.*